I respectfully dissent. I would reverse the trial court in this instance, reinstating the agreement of the parties incorporated into the final decree of divorce, just seven months prior to the mother's petition to modify. A careful review of the particular facts in this case does not reveal an "unworkable" situation. Instead, the facts reveal a situation wherein the mother does not want to have contact with the father (her ex-husband).
The majority is absolutely correct, that a child should never be forced to continue in an arrangement that is detrimental and unworkable. Additionally, I agree that custody determinations are always subject to change. Since its inception, however, joint custody arrangements have presented unique problems for divorced parents. A trial court that approves and incorporates such an arrangement in a divorce judgment must take some responsibility to determine, at that time, if the parties are prepared to put forth the effort required to promote the best interests of the children involved.
The joint custody provision in the present case reflected much thought by the parties as to what was best for their two little boys. The agreement states in pertinent part as follows:
 "2. The parties shall have the joint custody of the children. Each party acknowledges that both parties are equally fit and proper persons to have the care, custody and control of the children, and it is presently in the best interest of the children that their care and legal custody be shared jointly between the parties. Under the terms of this Agreement, 'joint custody' shall be defined and construed to mean that both parents shall have equal rights and responsibilities with respect to the minor children, and neither parent's rights shall be superior except as specifically provided by this Agreement.
 "(a) The parties agree that until the oldest child shall commence classes in kindergarten, both children shall reside with the [mother] on Monday, Tuesday and Wednesday of each week, and on alternate weekends; and shall reside with the [father] on Thursday and Friday of each week, and on alternate weekends.
 "(b) The parties further agree that upon the commencement of attendance in kindergarten by the oldest child, both children shall reside with the [mother] during each week from Sunday evening at 6:00 p.m., until Friday evening at 6:00 p.m. next following while school shall be in session during the fall and spring terms; on alternate weekends; on spring terms; on alternate weekends; on Christmas Eve or Christmas Day, the choice be made by the [father]; and for three (3) consecutive hours on Thanksgiving Day. The child[ren] shall reside with the [father] at all other times, including summer vacation, school spring vacation, Thanksgiving vacation, *Page 877 
Christmas-New Year vacation and alternate weekends."
Pursuant to paragraph 2(b) of the agreement, the parties recognized that once the oldest child began kindergarten, a more consistent weekly routine would be required. The mother testified that this routine had already begun without difficulty.
When parties divorce, an adjustment period is required for all involved, including the children. Here, the mother returned to court after a brief period, not because the facts revealed that the children were suffering from the agreed upon arrangement, but instead, to satisfy her own needs, to the exclusion of the father, and in my opinion, to the detriment of the children.
The record reveals the following facts which make it clear that it was an abuse of discretion to set aside the original custody provisions:
Both parties agreed in their testimony that the other is fit to have custody of the children. The complaints of the mother included the following: (1) that the joint custody arrangement required regular contact and coordination between the parties, (2) that notifying the father required too much contact between the parties and the contact usually related to finances, (3) that making major decisions was difficult if there was conflict, (4) that the parties had a strained relationship, and (5) that they could not communicate and make decisions on behalf of the children. She also testified, however, that the parties had worked pretty well within the written terms of the divorce, and a complete review of the testimony indicated that the conflicts with regard to the specific complaints made by the mother had been resolved.
One specific complaint made by the mother was that the oldest child was having behavioral problems in school. The parties agreed to take the child to a psychologist, Karen Confer, who stated that the oldest child's problems stemmed not only from the parties' conflicts, but also from the child's entering kindergarten, the birth of his little brother, and the mother's remarriage. According to Ms. Confer, these reactions were typical for a boy his age.
Both parties testified that they now try to shield the children from their conflicts and, as a result, these problems were being resolved. The mother further testified that the oldest child is doing "wonderful" in school this year.
Roger Rinn, a psychologist, testified that his evaluation of the oldest child indicated the child did not see the parents as adversarial. The witnesses in this case, including the children's day-care teacher, neighbors, and friends, testified that the children were well-adjusted and well-mannered. Eddie Sisk, the mother's current husband, testified that the children were well-adjusted when they returned from visitation with the father.
As the majority states, the trial court was free to consider all evidence, even matters preceding the divorce. The record provides additional facts which make this case one where an abuse will result if the father is denied all access to his children obtained pursuant to the original divorce judgment.
The record supported the fact that the mother was having a relationship with Eddie Sisk at the time the settlement agreement was executed by the parties. The parties entered into the agreement in February 1991, their divorce was final in April 1991, and the mother remarried in August 1991. The record also reflected that Eddie Sisk divorced his previous wife in February 1991. In November 1991, after the mother remarried and settled into her new home and new life, she returned to court seeking full custody of the parties' two children.
The parties apparently felt, at the time they entered into the settlement agreement, that a joint custody arrangement would provide consistency and was in the best interests of their children. Considering the numerous changes to which the children were subjected, a period of seven months was not enough time to determine if the joint custody arrangement was workable. Additionally, at the time of the trial, the parties, according to their own testimony, had resolved most of their differences. *Page 878 
A parent, the mother in this instance, should not be able to manipulate a system that disfavors joint custody arrangements, simply because she does not want to exert the effort necessary to make it work. There is nothing in the record to indicate that a change from the joint custody provisions would be in the best interests of the minor children, or that it would be in their best interests to spend less time with their father. Here, the judgment of the trial court is not supported by the evidence. Means v. Means,512 So.2d 1386 (Ala.Civ.App. 1987).
I recognize that the parties have some conflicts, as do most divorced parents with minor children. Rather than changing the original provision, however, I would urge the parties to work together to serve the best interests of their children.